IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  06 C 2648 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| ELITE MORTGAGE SERVICES, INC., | ) |
| DECISION ONE MORTGAGE CO., | ) |
| MORTGAGE ELECTRONIC REGISTRATION | ) |
| SYSTEMS, INC., MELVIN BROOKS, | ) |
| LeANDRE BURNETT, LORI WESTERFIELD, | ) |
| EARNEST TERRELL ROWELL, JOHNNIE | ) |
| PIERRE, NOVASTAR MORTGAGE, INC., and | ) |
| ALL UNKNOWN CLAIMANTS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Davis filed a thirteen-count second amended complaint against defendants Elite Mortgage Services, Inc. ("Elite"), Decision One Mortgage Co. ("D-1"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Melvin Brooks, LeAndre Burnett, Lori Westerfield, Earnest Terrell Rowell, Johnnie Pierre, Novastar Mortgage, Inc. ("Novastar"), and all unknown claimants.  Plaintiff alleges that the defendants organized a fraudulent scheme to persuade him to sign documents that he believed would refinance his home but which instead conveyed his home to a third party.  Specifically, Count VI alleges that the transfer of title to plaintiff's home should be declared void for unconscionability.  Defendant D-1 and its nominee, defendant MERS, have filed a motion to dismiss Count VI pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the court grants the motion to dismiss Count VI as to defendants D-1 and MERS.

# FACTS[1]

Plaintiff Thomas Davis, a 58-year-old retiree, owned a single family home and the accompanying property located at 2737 W. Washington Boulevard in Chicago, Illinois. Plaintiff's family had owned the property and plaintiff had lived in the home since 1947. Plaintiff made monthly payments of $990.40 to Ameriquest Mortgage Company ("Ameriquest") on a loan secured by a mortgage on the property.

Until February 2003, plaintiff worked as an outdoor laborer for the Chicago Department of Sewers. At that time, plaintiff's doctor told him that his work aggravated his severe asthma and advised him to stop working. When plaintiff left his job, he fell behind in his mortgage payments and other debts. On January 8, 2004, plaintiff filed for Chapter 7 bankruptcy to have his debts discharged. Plaintiff's debts were discharged by the bankruptcy court on April 29, 2004, but that discharge order did not include the Ameriquest mortgage by agreement of plaintiff and Ameriquest. At that time, the outstanding value of the mortgage was higher than the appraised value of plaintiff's home. In March 2004, Ameriquest threatened to foreclose on the mortgage for plaintiff's home. Plaintiff believed he had until April 16, 2004, to refinance to avoid foreclosure.

In 2004, defendant Elite Mortgage Services, Inc. ("Elite") advertised to the public that it could use its expertise in mortgage financing and brokering to "save" the property of homeowners facing foreclosure. Plaintiff called Elite in March 2004 and was referred to defendant Brooks, who told plaintiff he was a "mortgage consultant."

---

[1]For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

Several days later, defendants Brook and Burnett met with plaintiff at his home. At the meeting, Brooks told plaintiff that Elite would arrange a refinancing plan, under which plaintiff would make monthly mortgage payments of no more than $1100. Brooks told plaintiff that although the monthly payments would be higher than what plaintiff had previously paid, the refinancing plan would prevent foreclosure and provide plaintiff with a better credit rating. After discussing the refinancing plan with Brooks, plaintiff believed that Elite would refinance his mortgage debt to pay off the loan from Ameriquest and secure a new loan at a 10-11% interest rate. According to plaintiff, when he asked Brooks if he needed legal representation, Brooks told him that Elite would provide him with an attorney. Additionally, at no point during the meeting did Brooks or Burnett tell plaintiff that the refinancing plan would result in the sale of plaintiff's home to a third party.

On April 30, 2004, plaintiff met with Brooks at Elite's office. They then drove to another office with Burnett and defendant Rowell for a closing meeting. Plaintiff then met defendant Westerfield, whom Brooks introduced as an attorney representing both parties to the transaction. Plaintiff had previously spoken with and received documents from Westerfield; at the meeting, Westerfield told plaintiff she was representing him. At no point did plaintiff sign a retainer agreement or receive any information about Westerfield's fees. Westerfield did not disclose to plaintiff at any point that she had a business relationship with Elite.

During the closing, Westerfield told plaintiff which documents to sign, and she told plaintiff that the transaction was legal. Brooks told plaintiff that his home had been reappraised at $200,000. He also told plaintiff that because Elite could not find a lender to refinance the mortgage, it had brought in Rowell as an investor. Upon learning of Rowell's role, plaintiff

initially refused to go forward with the closing because he was confused about the transaction. Brooks told plaintiff that Rowell was only a temporary investor who would technically purchase the home, and that plaintiff's name would replace Rowell's on the title after one year if plaintiff made all mortgage payments.

Westerfield and Brooks advised plaintiff to accept the conditions of the transaction. In reliance on their advice, on April 30, 2004, plaintiff signed a number of documents, including a "Contract for Deed," which stated that Rowell would convey the property to plaintiff for a price of $190,000, and that plaintiff would make monthly mortgage payments of $1,223.51. The contract also provided that in the event that plaintiff failed to make the final balloon payment for the balance of the purchase price or the accrued interest and other charges, Rowell would have the option "to assist the buyer with purchase or give purchaser notice of default." Plaintiff signed no document that gave him the right to continue living in his home after the conveyance of the property to defendant Rowell. Plaintiff did not understand when he signed the documents that he was conveying full, unconditional title to Rowell.

According to plaintiff, Elite, Brooks, and Burnett informed Rowell of plaintiff's financial situation and told him the price he should pay for the property. No one informed plaintiff that Rowell was aware of his financial situation, and no one obtained plaintiff's consent to share such information. Additionally, Elite, Brooks, and Burnett did not attempt to find other refinancing options for plaintiff or put his home on the open market to obtain the best purchase price. Elite received fees from Rowell for facilitating the transaction with plaintiff.

Plaintiff alleges that defendants promised him a cash payment of approximately $56,500 for signing the refinancing documents, but he received only $18,000. Beginning in May 2004,

4

plaintiff began making monthly payments of $1,223.51 on Rowell's mortgage. These payments were $123.51 higher than the payment Brooks told plaintiff he would make, and $223.51 higher than his prior monthly payments. The name "Earnest Terrell Rowell" was typed on the payment coupons plaintiff used. Plaintiff made these monthly payments in Rowell's name by using Rowell's social security number. According to plaintiff, he believed that these payments were being credited to the equity he had been building in his property.

Plaintiff made twenty monthly payments on Rowell's mortgage. He did not, however, regain full title to his home in April 2005, as promised by Brooks and Elite. Instead, plaintiff signed another document labeled "Contract for Deed" on May 1, 2005, which purported to extend his mortgage payment obligations for one more year, giving him the option to repurchase his home from Rowell in May 2006 for $190,000. No payments made by plaintiff on the mortgage were credited toward the $190,000 plaintiff was required to pay Rowell to regain title to his home. Plaintiff and Rowell also signed a document entitled "Chicago Residential Lease," which provided that plaintiff would lease the home from Rowell, and that his monthly rent payments would be "made out to mortgage companies."

Plaintiff made the required monthly payments on Rowell's mortgage from May 2004 through November 2005. In December 2005, Rowell notified plaintiff that the insurance on the property had lapsed, and that plaintiff was required to pay $680 for six months of insurance coverage, as well as $1600 in gas and electric bills. Plaintiff was unable to make all payments, and as a result, he did not make his December 2005 mortgage payment on time.

In January 2006, plaintiff's monthly mortgage payment was increased to $1,279.51. Plaintiff was late with his monthly payment, at which point Rowell called plaintiff and

5

threatened to change the locks because plaintiff's late payment was having a negative effect on Rowell's credit. On February 14, 2006, plaintiff recorded with the Cook County Recorder of Deeds a "Notice of Equitable Mortgage" setting forth his claim to the sole legal title to his home.

Plaintiff missed his April 2006 payment, and in May 2006, Rowell served plaintiff with a notice of intent to file a complaint for forcible entry and a detainer. On May 11, 2006, Rowell conveyed title to the property to defendant Johnnie Pierre for $345,000. Pierre's purchase of the property was financed with a mortgage loan from NovaStar Mortgage, Inc., which recorded the mortgage with the Cook County Recorder of Deeds on May 19, 2006. On February 14, 2006, plaintiff recorded with the Cook County Recorder of Deeds a "Notice of Equitable Mortgage" setting forth his claim to the sole legal title to his home.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001).

Count VI of the complaint, brought against defendants Elite, Brooks, Burnett, Rowell, and D-1, alleges that the contract for deed through which plaintiff lost title to his home is

unenforceable because it is unconscionable. The doctrine of unconscionability "provides a basis for nullifying a contract or one of its terms if it 'is so difficult to find, read or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it' or 'inordinately one-sided in one party's favor.'" Hill v. Sisters of St. Francis Health Services, Inc., 2006 WL 3783415, *6 (N.D. Ill. 2006), quoting Razor v. Hyundai Motor Am., 222 Ill. 2d 75, 99-100 (2006).

As defendant D-1 points out, the complaint alleges very few facts concerning D-1 or MERS, its nominee. Although the complaint describes the parties' conduct in great detail, the only connection between D-1 and the April 30, 2004, contract that plaintiff alleges is unconscionable appears to arise from D-1's mortgage loan to Rowell. Because no contractual relationship between D-1 and plaintiff is alleged, plaintiff cannot claim unconscionability on the part of D-1 or MERS. Further, to the extent that either of these defendants is necessary for complete relief, plaintiff has brought allegations against them in Counts III and XI. For these reasons, the court grants the motion of defendants D-1 and MERS to dismiss Count VI.

## CONCLUSION

For the reasons discussed above, the court grants the motion to dismiss Count VI as to defendants D-1 and MERS. This matter is set for a report on status April 19, 2007, at 9:00 a.m.

**ENTER:** April 11, 2007

_____
**Robert W. Gettleman**
**United States District Judge**