IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  06 C 2648 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| ELITE MORTGAGE SERVICES, INC., ) | |
| DECISION ONE MORTGAGE CO., ) | |
| MORTGAGE ELECTRONIC REGISTRATION ) | |
| SYSTEMS, INC., MELVIN BROOKS, ) | |
| LeANDRE BURNETT, LORI WESTERFIELD, ) | |
| EARNEST TERRELL ROWELL, JOHNNIE ) | |
| PIERRE, NOVASTAR MORTGAGE, INC., and ) | |
| ALL UNKNOWN CLAIMANTS, ) | |
| ) | |
| Defendants. ) | |

**CORRECTED MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas Davis filed a fourteen-count third amended complaint against defendants Elite Mortgage Services, Inc. ("Elite"), Decision One Mortgage Co. ("Decision One"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Melvin Brooks, LeAndre Burnett, Lori K. Westerfield, Earnest Terrell Rowell, Johnnie Pierre, NovaStar Mortgage, Inc. ("NovaStar"), E & I Funding Corp. ("E & I Funding"), and all unknown claimants. Plaintiff alleges that the defendants organized a fraudulent scheme to persuade him to sign documents that he believed would refinance his home but which instead conveyed his home to a third party. Specifically, Count III alleges that the transfer of title to plaintiff's home should be construed as creating an equitable mortgage rather than a formal conveyance of real property.

Defendant NovaStar has asserted five affirmative defenses: (1) defendant Pierre was a bona fide purchaser of the Property for value; (2) defendant NovaStar, as a mortgagee, was a

bona fide purchaser for value; (3) waiver; (4) estoppel; (5) subrogation; and (6) laches.  Plaintiff has moved for partial summary judgment on defendant NovaStar's first, second, third, and fourth affirmative defenses.  In the alternative, plaintiff has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) or to strike these defenses under Fed. R. Civ. P. 12(f).  For the reasons set forth below plaintiff's motion is granted.

## FACTS

Plaintiff Thomas Davis, a 58-year-old retiree with one year of high school education, owned a residence and accompanying property located at 2737 W. Washington Boulevard in Chicago, Illinois.  Plaintiff's family had owned the property and plaintiff had lived in the home since 1947.  Plaintiff made monthly payments of $990.40 to Ameriquest Mortgage Company ("Ameriquest") on a loan secured by a mortgage on the property.

Plaintiff worked as a laborer for the Chicago Department of Sewers, now the Chicago Department of Water Management, until he retired in February 2003.  When plaintiff left his job, he fell behind in his mortgage payments and other debts, and in January 2004 plaintiff filed for Chapter 7 bankruptcy.  On April 29, 2004, the bankruptcy court discharged plaintiff's debts, but by agreement of plaintiff and Ameriquest that discharge order did not include the Ameriquest mortgage.  At that time, the outstanding value of the mortgage was higher than the appraised value of plaintiff's home.

Plaintiff testified in his deposition in the instant case that in March 2004 Ameriquest threatened to foreclose on the mortgage and gave him until April 16, 2004, to refinance to avoid foreclosure.  In March 2004, plaintiff called defendant Elite Mortgage Services, Inc. ("Elite") for

2

assistance in preventing the foreclosure of his home. Elite referred plaintiff to defendant Brooks, and on April 30, 2004, after various meetings with Brooks, defendant Burnett, and defendant Westerfield, plaintiff signed a number of documents, including a "Contract for Deed." The contract stated that plaintiff would convey the property to Rowell for a price of $190,000, and that plaintiff would make monthly mortgage payments of $1,223.51. The contract also gave plaintiff the option to repurchase his home from Rowell in May 2005 for $190,000. In the event that plaintiff failed to make the final balloon payment for the balance of the purchase price or the accrued interest and other charges, Rowell would have the option "to assist the buyer with purchase or give purchaser notice of default." Plaintiff signed no document that gave him the right to continue living in his home after the conveyance of the property to defendant Rowell. Plaintiff testified that he did not understand when he signed the documents that he was conveying full, unconditional title to Rowell.

Plaintiff received $18,000 for signing the refinancing documents, and beginning in May 2004 he began making monthly payments of $1,223.51 on Rowell's mortgage. These payments were $223.51 higher than his prior monthly payments. Plaintiff made these monthly payments in Rowell's name using Rowell's social security number with payment coupons bearing the name "Earnest Terrell Rowell." According to plaintiff, he believed that these payments were being credited to the equity he had been building in his property.

Plaintiff did not regain full title to his home in April 2005. Instead, he signed another document labeled "Contract for Deed" on May 1, 2005, which extended his mortgage payment obligations for another year, giving him the option to repurchase his home from Rowell in May 2006 for $190,000. No payments made by plaintiff on the mortgage were credited toward the

$190,000 plaintiff was required to pay Rowell to regain title to his home. Plaintiff and Rowell also signed a document entitled "Chicago Residential Lease," which provided that plaintiff would lease the home from Rowell, and that his monthly rent payments would be "made out to mortgage companies."

Plaintiff made the required monthly payments on Rowell's mortgage from May 2004 through November 2005 – twenty monthly payments in total. Beginning in December 2005, plaintiff had trouble making the payments on time. In January 2006, plaintiff's monthly mortgage payment was increased to $1,279.51. On February 14, 2006, plaintiff recorded with the Cook County Recorder of Deeds a "Notice of Equitable Mortgage" setting forth his claim to the sole legal title to the property.

Plaintiff missed his April 2006 payment, and in May 2006 Rowell served plaintiff with a notice of intent to file a complaint for forcible entry and a detainer. On May 11, 2006, Rowell conveyed title to the property to defendant Johnnie Pierre for $345,000. Pierre's purchase of the property was financed with a mortgage loan from NovaStar which recorded the mortgage with the Cook County Recorder of Deeds on May 19, 2006. Thereafter, Plaintiff filed the instant suit.

## DISCUSSION

*Legal Standard*: *Summary Judgment*

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The

burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotex, 477 U.S. at 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

*NovaStar's Affirmative Defenses of Bona Fide Purchaser*

The first issue concerns NovaStar's bona fide purchaser affirmative defenses. Bona fide purchase is a valid affirmative defense for which the defendant bears the burden of proof. Independent Coal & Coke Co. v. United States, 274 U.S. 640, 650 (U.S. 1927) (citing Wright-Blodgett Co. v. United States, 236 U.S. 397, 403); Daniels v. Anderson, 252 Ill.App.3d 289, 296 (Ill. App. 1st Dist. 1993). "A bona fide purchase interest in property takes that interest free and clear from all claims except those of which [one] has notice." Daniels, 252 Ill.App.3d at 296. Notice may be actual or constructive and "contemplates the existence of circumstances or facts either known to a prospective purchaser or of which he is chargeable with knowledge which imposes upon such purchaser the duty of inquiry." Burnex Oil Co. v. Floyd, 106 Ill.App.2d 16, 21 (1st Dist. 1969).

Under the doctrine of constructive notice, the law imputes to a buyer or lien claimant knowledge of the facts that a diligent inquiry would have brought to light. Miller v. Bullington, 381 Ill. 238 (1942). The Illinois Supreme Court has long held that a purchaser must inquire into "persons in possession of real estate and by what tenure they hold and by what interest they claim, and is put on notice of all claims, legal and equitable, which the pursuit of such inquiry would disclose." Ambrosius v. Katz, 2 Ill.2d 173, 182 (1954); Miller, 381 Ill. at 243; Stein v. Green, 6 Ill.2d 234, 242 (1955) (holding that it is the purchaser's responsibility to investigate the property and inquire as to the rights of any individual in possession of the property). Because possession has "substantial significance and consequences," it must be "visible, open, exclusive and unambiguous." Burnex, 106 Ill.App.2d at 21-22; Miliken Trust Co. v. Gregory, 292 Ill.App. 28, 29 (3d. Dist. 1937) ("Possession, before it can be held to operate as notice of an unrecorded deed, must be open, visible, exclusive, and unambiguous, such as it is not liable to be misunderstood or misconstrued."). The occupation of property by a party other than the record owner is "legally equivalent to the recording of such interest." Burnex, 106 Ill. App.2d at 21.

The question then is whether NovaStar was a purchaser with notice. The record contains no evidence that NovaStar had actual knowledge of plaintiff's possession of the property, his equity in the property, or his claim to title. Nevertheless, were there facts to put NovaStar on constructive notice? NovaStar asserts that there was nothing in the loan file to suggest that plaintiff may have been in possession of, or had any interest in, the property. On the contrary, there were numerous signposts of plaintiff's possession that NovaStar failed to heed. In re Ryan, 851 F.2d 502, 511 (1st Cir. 1988) (Duty of inquiry arises only where one acquires knowledge of

6

facts inconsistent with the mortgagor's claim or "facts which would make a prudent person suspicious.").

The record shows that plaintiff was in actual and exclusive[1] possession and occupancy of the home at the time NovaStar approved the mortgage loan to Pierre in May 2006. In fact, plaintiff had lived in the home since 1947. The record also shows that based on documents in NovaStar's loan file, NovaStar had reason to know that there were several inconsistencies in the facts surrounding possession and occupancy of the property. First, the home appraisal states both that there were tenants occupying the property and that the property was vacant. Second, NovaStar's title audit documents show that less than a week before the May 11, 2006, closing, NovaStar had information that an individual named George Marshall was allegedly living in the property and that Rowell, the owner of record, "lives in property as primary and doesn't know anyone by the name of George Marshall." Third, NovaStar's title policy states that "DAVID THOS, TOOK TITLE BY DEED" on March 4, 1997.

Despite these inconsistencies, NovaStar failed to make any inquiry into actual possession and claims on the property. NovaStar's own employee, in her deposition in the instant case, testified that given the inconsistencies in the loan file, it would have been prudent for NovaStar to inquire into the matter further. Had NovaStar made the proper inquiry, it would have found that: (1) the property had never been occupied by Marshall, Rowell, or Thos; (2) the name David Thos does not appear anywhere in the Cook County Recorder of Deeds grantor-grantee

---

[1]NovaStar's argument that the fact that plaintiff's nephew lived with him during the relevant period somehow destroys plaintiff's "exclusive" possession is specious. If co-residence by family members negated exclusivity only single occupants would qualify for possession of real estate. No court has ever reached such an absurd result.

index, the Permanent Index Number ("PIN") index, or any other document in the record; and, most importantly, (3) plaintiff had visible, open, exclusive and unambiguous possession of the property and claimed to title on the property.

NovaStar argues that an inquiry into possession would have revealed only that plaintiff was a tenant of Rowell, the tenancy expired 11 days before the loan closing date, and that plaintiff had failed to exercise two consecutive options to repurchase the property from Rowell. An inquiry into possession, however, would have also revealed that plaintiff's attorney had filed a Notice of Equitable Mortgage and Affidavit of Interest (the "Notice") on February 14, 2006, with the Cook County Recorder of Deeds in which plaintiff claims sole legal and equitable interest in the property. Though the Recorder placed the Notice in the PIN index, and not in the grantor-grantee index, this, in combination with plaintiff's possession of the property, was sufficient to alert NovaStar about the dispute about the property's title.

NovaStar argues that the Notice was insufficient to supply notice for several reasons. First, NovaStar argues that the Notice was not in the grantor-grantee index, and therefore did not give constructive notice. Krueger v. Oberto, 309 Ill.App.3d 358, 368 (2d Dist. 1999) ("recording outside of the grantor-grantee index in other indices is recording merely for convenience and does not operate to give constructive notice to subsequent purchasers."); see Skidmore v. Pathway Financial, 173 Ill.App.3d 512, 515 (3d Dist. 1988) (same). Second, NovaStar contends that the Notice was not an "instrument of writing" as contemplated under 765 ILCS 5/31 ("Deeds, mortgages and other instruments of writing relating to real estate shall be deemed, from the time of being filed for record, notice to subsequent purchasers and creditors"). Finally, NovaStar argues that plaintiff should have filed a *lis pendens*, pursuant to 735 ILCS 5/2-1901,

instead of the Notice if he wanted to notify the world of his claim to the property. NovaStar's arguments might have some merit if the Notice, standing alone, was the only means by which Pierre and NovaStar had notice of the title dispute. But here the Notice, coupled with plaintiff's open, exclusive, continuous, and unambiguous possession of the property, was enough to satisfy constructive notice.

The court notes that the PIN index for the property reveals that the Notice was not buried among hundreds of other entries, but was the last entry before those recording the transfer of title from Rowell to Pierre. Further, plaintiff's name appears nearly 20 times in 35 entries in the PIN index for the property. As plaintiff points out, NovaStar's own title commitment confirms that it examined the PIN index in identifying "David Thos" as possibly being in the chain of title. If NovaStar had made even minimal effort to exercise due diligence in investigating the property, it would have learned that plaintiff was not a mere tenant or random name in the PIN index, but the primary individual with historical and current claim to title to the property.

The uncontested facts establish that NovaStar made the mortgage to Pierre with constructive notice of plaintiff's claim to the property, and therefore neither Pierre nor NovaStar are entitled to bona fide purchaser status. The motion for summary judgment as to the first and second affirmative defenses is granted.

*NovaStar's Affirmative Defenses of Waiver and Estoppel*

Plaintiff has moved to strike, or in the alternative for judgment on the pleadings on, NovaStar's affirmative defense of waiver and estoppel. Motions to strike affirmative defenses are generally disfavored in this circuit because often times they are employed for the sole

9

purpose of causing delay. See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Such motions will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (internal citations and quotation marks omitted).

It is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case. See Household Fin. Serv., Inc. v. Northeastern Mortgage Inv. Corp., 2000 WL 816795, at *1 (N.D. Ill. June 22, 2000) (citing Heller, 883 F.2d at 1295). It is also true that because affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a "short and plain statement" of all the material elements of the defense asserted; bare legal conclusions are not sufficient. See Heller, 883 F.2d at 1294; Fed. R. Civ. P. 8(a); Renalds v. S.R.G. Restaurant Group, 119 F.Supp.2d 800, 802 (N.D.Ill. 2000).

All of this boils down to a three-part test that is applied to affirmative defenses subject to a motion strike:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge -- in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

Renalds, 119 F.Supp.2d at 802-03 (citing Heller, 883 F.2d at 1294).

Here, NovaStar's affirmative defenses of waiver and estoppel are both inadequately pled because they rely on "Davis' conduct with respect to the Property, as set out in the second amended complaint." Both affirmative defenses fail to point to specific allegations in the pleadings that satisfy the essential elements of either defense. The court is left to speculate as to

as to which aspects of plaintiff's behavior constituted "voluntary relinquishment of a known right, claim or privilege" or "knowledge at the time the representations were made that the representations were untrue." See Vaugh v. Speaker, 126 Ill.2d 150, 161-62 (1988) (discussing the essential elements of waiver and estoppel).[2] Further, NovaStar has failed to adequately plead estoppel as a defense because it did not state in its answer that it relied on plaintiff's conduct to its detriment. Id.

Therefore, plaintiff's motion to strike NovaStar's affirmative defenses of waiver and estoppel is granted with leave to file amended affirmative defenses consistent with this opinion within 28 days hereof.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment as to defendant NovaStar's first and second affirmative defenses is granted, and plaintiff's motion to strike NovaStar's third and fourth affirmative defenses is granted with leave to amend. This matter is set for a report on status on April 14, 2009.

**ENTER:**     **January 9, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[2] NovaStar's explanation of its defenses of waiver and estoppel in greater detail in its response brief cannot cure the deficiencies of its affirmative defenses at the pleading stage. See, eg., Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir. 1989) (a complaint may not be amended by briefs in opposition to the motion to dismiss).